Good morning Your Honor. Douglas Phelps on behalf of the appellant Maxwell Jones. I reserve five minutes, I'm sorry. Your Honor, the case of Maxwell Jones involves some interesting issues in terms of there was a photo montage that was involved in Mr. Jones' case where Mr. Jones has a scar on the left side of his, I believe it's the left side of his face. The photo montage included a photo with five other individuals, none of whom had any scars on their face. The significance of that I think became very clear during trial where first the attempt to see if he had a scar on his face. Additionally, in the jury deliberations, somewhat of an unusual situation, the jurors asked to have Mr. Jones walk in front of them so that they could attempt to see if there was a scar on his face. And so I think that became somewhat critical in the entire case and I think that demonstrates the significance of it in the pre-identification where the sheriff's department took the photo montage. That photo montage is included in the government's case or a copy of it. In their briefing they have a copy of that and it does show a scar off on the left side of his throughout the trial, even into jury deliberations. And we believe that that is an appropriate basis for the case to be remanded for a new trial. The Washington Superior Court 031-009-645 and 03-100-656-5 and 031-01409-6 where he was not represented on one in the entry of a plea. His attorney, Mr. Armstrong Williams, withdrew from the case and in two of the cases there was no attorney representing him at all. So he pled without any representation. We're trying to figure out what happened during that time period and I guess one of the questions I have is were the parties and the district court in this case aware of the government's 2006 sentencing memorandum? Judge, I didn't represent him at his trial and sentencing and it appears that from what I can determine from the record that the defense attorney that represented him was not aware of that at the time that she handled the sentencing. So it appears to me that they were not aware of what had occurred in that earlier case. Not completely in any way. There's a reference to Judge Quackenbush. Well, I will clarify. Judge Quackenbush. And the government's counsel was aware of the 2003 transcript because I think he had it. And it was aware of the plea agreement and so it's just it's interesting and I'm sure government will address this but I just want to know since a lot of this is your burden. Right. What I want to do is clarify the inner sentencing memorandum of the trial counsel included a copy of some of the transcript from the questioning of the state court judge about whether or not he was going to represent himself. And I think that was provided to the defense counsel by Mr. Holmes who's here in court today. And she filed a sentencing memorandum raising that issue with the court and asking the court not to consider those charges where he was unrepresented in state court. So the court did have before it that transcript where Judge Levesque in state court questioned him about being unrepresented not having an attorney and going forward. Although I don't know that it was fully explored by the state court judge. But they did have the court did have that before it at sentencing in the district court. I'm curious too. One of the uncounseled state convictions from 2003 that was used to enhance Mr. Jones' sentence was for a second degree possession of stolen property. But Mr. Jones doesn't challenge that conviction. He didn't challenge it before the district court. He doesn't seem to challenge it on appeal and I'm trying to figure out if there was a reason for that. I think that I would be speculating as to why it didn't happen before with the trial counsel that handled it. I guess it appears to me that the argument that was put forward to the court was he didn't have an attorney. You shouldn't use it for anything because he didn't have an attorney and he wasn't adequately represented. And again I wasn't the attorney there. But from what I can gather from the record that I have available the attorney that represented him was just arguing that he wasn't represented. You shouldn't consider it at all. Assuming that a stop all doesn't apply against the government from the 2006 sentencing memorandum. I'm just trying to figure out what would you want to happen if this case were remanded to sentencing? Well if I were handling it, if it's remanded and I'm handling it, I'll go back and try and more fully develop the record from what happened in state court and present a more complete record. But I would also argue that under United States sentencing guidelines section 4A 1.2 that if Judge Quackenbush has made that determination in the prior case that under the sentencing guidelines the court cannot consider that for any purpose at resentencing. If Judge Quackenbush has said in that earlier case and adopted the findings that he wasn't properly represented, it shouldn't be represented, it shouldn't be considered, then under the sentencing guidelines the court with Judge Nielsen that we're here on today, he should not consider that at all. And just what specific provision is that? What does it say? The United States, I cited it in my brief. There was a lot of reference. I just want to know which one is 4A 1.2? The 4A 1.2 talks about if you've gone back to state court and had the conviction removed and then in the last section 4, I think it's sub 4, it says or if it's been adopted by a prior court in federal court it should not be used for any purpose. We don't have to determine the guidelines here, of course, but have you, if you should prevail here for remand and argue before the district court, what would be your suggested guideline range? I would be in agreement with the defendant's attorney that handled the case below. I will advise the court that that may change the trial attorney's calculation, but I would advise you that the defendant has had some of those cases that were pending in state court have since been adjudicated and so it may arguably be different. And we'll have to deal with whatever his history is at the time we're back before the court. Well, without those conditions, it was somewhere, as I recall, between 51 and 60 months as opposed to the 144. It's about double if those aren't considered. So it's a significant amount of time that we're talking about in this case. Because it would have affected his base offense level and his criminal history. That's correct. And so I think there's at least four bases for this court to remand back and order the district court not to consider those factors. That's the government's statement of the AUSA at the time of sentencing, and I think he was trying, in a subtle way at least, to advise the court. And I think we cited to it again in our brief, but he said, well, so the court is not considering those unrepresented cases. And then the judge responded that, well, he wasn't going to consider them for the Armed Career Criminal Act, but he was going to consider them on the other matter. And therefore, he didn't think it made much difference. Additionally, we now know the prior position of the government, and I don't know that the court was fully advised on the government's position, but we now have that information. And then, as I pointed out, the sentencing guidelines, where it says that under 4A.1.2, that it should not be considered by a court in a subsequent sentencing. And then lastly, the argument of judicial estoppel, that the government should be barred if they took that position in a prior proceeding, and that's adopted by the court, then the court should not consider it in a subsequent proceeding. Well, but the estoppel issue, you have to show that it was intentional, or that the government had... I think that record probably needs to be more fully developed. I think that... You acknowledge that? I mean, we haven't been able to establish that the government did that on purpose. Or we haven't... And I don't know that I've been able to... Or misrepresented, I guess. Right. And I don't know that I can show completely, given the record that we have here today, that the court adopted that position. So I think the record is less than complete, and perhaps the best course of action would be to remand for the record to be more fully developed. But it seems that the court, at least in part, adopted the position that... Well, I think it's clear that the court, in part, adopted the position that those three cases should not be considered. And I don't know how the court says, he was not properly represented, and we're not going to consider those for the Armed Career Criminal Act, yet I'm going to consider them in using the... Arriving at the calculation and the guideline range. And if the court has improperly calculated the guideline range, I think we know under Kimball and Rita, the cases, again, I cited in my brief that the failure to properly calculate the guideline range requires a remand for resentencing. I think that's where we're at in this case. It appears that the court did not properly calculate the guideline range, and it should be remanded for resentencing. Do you want to reserve your last... Yes, I would. Thank you. Good morning. May it please the court. My name is Tim Olms. I'm from the U.S. Attorney's Office in Spokane, here representing the government. Can you speak right into the microphone? I'm sorry? I think I can. So, the court asked whether the parties or the court was aware of the 2006 sentencing memorandum. I wasn't aware of it. It's clear that Judge Nielsen was aware that Judge Quackenbush had found that there were problems with those prior uncounseled convictions and didn't use them, but it's not clear that he would have seen the sentencing. Is it possible that Judge Nielsen had that before, but you were unaware of that? It just is surprising because you were aware of the 2003. You handed over, I think at the sentencing or at one point in time, the 2003 transcript. Well, I provided it to the defense counsel, and it had been something that I had discussed with the prior defense counsel. I was aware of it because it was an archived file that I'd brought up from archives, but there was not a sentencing memo. I'm assuming there may be another hard copy file. What there was in it was the plea agreement that I drew certain inferences from. My conclusion, because of the way it was pled, that case was pled down from a, or instead of having the defendant plead to felony possession of a firearm, I believe he pled guilty to an amended charge of possession of a stolen firearm. Based on my experience, I read that as the AUSA who handled the case recognized that there was an issue here and was just simply trying to avoid it in order to then provide the defendant an opportunity to go back in the state court and to address it there. You've since become aware of the 2006 memorandum. I became aware of it after the order for the supplemental brief. What are your views now? Do you think that the government can go back and argue something differently? Not on the record, not on the current record. The only thing that concerned me is that I saw what happened in the prior case as a negotiated resolution. The sentencing memorandum makes clear that the government's position went beyond that to asserting that the prior uncounseled convictions were constitutionally infirm. But I don't know that there was a complete record available to fully assess that because I haven't seen. Counsel, I'd like to clarify your answer on this question. Are you saying that there should be a remand with instructions not to consider those convictions because of the 2006 position that was taken? Or are you saying that there should be a development of the record on that point? It sounded like a little of each and I wasn't clear. Well, the government's position based on the record, if it were remanded, would be that the court should not consider them for any purpose. But since I don't believe that even the position previously taken by the government was based upon a complete record, I think it would be preferable to give the district court the opportunity to have that issue further developed by the defense counsel and by the government. Based on the record, though, that you are aware of today, you would agree with your fellow AUSA back in 2006? I would because the defendant was essentially stripped of his counsel. It was a situation where he was saying, I don't want my counsel to withdraw. And it just was a very unfortunate situation where the judge at that time did not make a sufficient inquiry and allowed the counsel to withdraw. And it sort of left the defendant to negotiate his way with the state prosecutor on his own. And it doesn't appear as though anybody was there really protecting the defendant's interests at that point. Well, and the 2003 transcript, apparently you did have, but nobody included that in the excerpts of record here on appeal. I think that would have been helpful to have. You didn't submit it. You were aware of the 2003 transcript. Yes. I thought, I did submit it with my supplemental brief, but it was made, I believe, initially part of the record through the defense sentencing memorandum. So it was referenced through that. Nobody submitted the 2003 transcript. I agree with that. It just seems like, on reflection, hopefully you think that might have been a better idea to submit it. Yes, I do. And on reflection, I think that my role at that sentencing hearing was much too passive, and I didn't provide the assistance to the district court that I believe I could have and should have. And so you also agree that the guideline was affected. Yes. And it could affect his base offense level and his criminal history category. I believe that to be true. So are you agreeing that a remand is appropriate? The position I formally took in my supplemental brief is I'm acknowledging that. That's a yes? Yes, I'm acknowledging that, Your Honor. Okay. It wasn't really clear from your point. Well, I don't know. Sometimes when you concede things. Sometimes when you concede things, when you have to concede things, it's the right thing to do. Yes. I acknowledge that that sentencing memorandum should have been provided to the court in response to the pre-sentence report that was prepared so that the court could have considered that independently, or at least the position from that sentencing memorandum. That's my perspective on it at this point, Your Honor. I mean, I've reflected on it now. It seems like you're a little bit back-pedaling from what you said before, because before you acknowledged that based on the record you have before you, not only should that have been the 2006 memo should have been used and presented, based on the 2006 memorandum, those prior convictions were constitutionally invalid. Yes, Your Honor. That's the position that I should have taken based upon that sentencing memorandum. So I don't know how. I mean, I'm not trying to be overly coy with the language, but I think that my position is clear. You take that position today, but you'll also take it at resentencing. Yes. There wasn't a lot of argument on the other issues with regard to trial deficiencies, and I don't know if the court has questions about those. I just wanted to make sure that the court is clear that some of these issues, for instance, the whole issue of identification only applies to count one. It's not an issue with regard to counts two and three. There were two trials, two separate trials. So some issues are only relevant to one trial versus another. Identification was only an issue with regard to count one. The government's position is that the material question isn't whether the defendant had a scar on his face, but whether it was visible within the photo montage. I don't believe it's visible. The district court didn't believe it was visible and couldn't see it. And then you can make the comparison yourself with government's exhibit nine, which is the separate booking photo that does show the scar. What about the issue of bringing the defendant out after the jury is deliberating for the jury to take a look at him, a closer look at him? Well, it's an interesting question. I didn't advocate for that procedure and indicated to the court that the court could simply say no, that the jury, we won't do that. But there are two separate questions. One question, there's two ways of analyzing it. One is, is that a reopening of evidence, which under some circumstances the court can do, or is it simply allowing the jury or analogous to allowing the jury to see something that's already in evidence but that won't go back into the jury room, like we do with drug exhibits or firearm exhibits. And I would argue that it's more analogous to allowing the jury to see something that's essentially in evidence because the scar was discussed, photographs of the defendant were placed in evidence, some of the jurors perhaps could have had a better view of the defendant from where they were sitting. That could have been a discussion in the jury room, and they asked the question, can we see him? And it was really the defendant. I mean, if the defendant didn't want to do it, he certainly had an opportunity to tell the court that, but he told the court that he was okay with it, and that was his consistent position. So to ask for a remedy now, it's inconsistent with the position taken by the defendant at the time when he had an opportunity to object to the procedure if he didn't want to do it. I'm trying to think of what benefit that would be to the defendant. It seems like the defendant ought to be the one objecting. Well, because we were reviewing that for plain error, right? Yes. What does the defendant get out of that? Yes, I do have a scar, look closer. Well, keep in mind that Exhibit 9, which was the booking photo that shows the scar, was already in evidence. So the jury could see the photo of the defendant with the scar, and they could compare that to the photo montage if they wished. So perhaps they just wanted to see how noticeable the scar would have been to the Pirtles, the retired couple who encountered the individual who sold the firearm to Mr. Pirtle and later identified the defendant, to see how visible it was. The defendant, throughout both trials, was very active with his defense, seemed very intelligent. I'm sure that within his mind he had his reasons why he felt that that was an appropriate thing for him to do. But the bottom line is he clearly expressed his preference to the court to go ahead and go forward with that procedure. Thank you very much. Thank you, sir. Mr. Phelps? I would argue that as to the remand back, that it should be with instructions that the court should not consider the prior convictions for any purpose. It appears that the judge, well, it is clear that the judge in the district court here in this case adopted the position that the prior convictions were invalid based upon the lack of representation. If indeed that's true, the court shouldn't consider those convictions for any purpose. Can you clarify? Because you said something before that things may have happened on those convictions or on different convictions? On different convictions. In the sentencing, in the pre-sentence investigation report, there's other state cases that have not been determined yet. He hasn't had trial or anything. And since this case, since he was sentenced on this case, he's gone back to court in the state court and those cases have been tried. When you say those cases, I want to be clear which ones. What I mean by that is there were pending criminal cases in the Washington courts that he had not gone to trial yet and there hadn't been any determination. Since he's been sentenced on this case in federal court, those cases that were not yet decided have gone to trial, and so there may be additional criminal history that arguably the court would have to consider. He could go back up to 140 months. Well, I don't think it's that bad, but I think there would be a change in his position. And so there is some prejudice to him if he's sent back for resentencing. I don't think it would be nearly as disastrous as it has been in this matter with 144 months that he's looking at. So we would ask that it be remanded with instructions to sentence within the range that was available at the time, and I know that's certainly up to you. As to the problem with the jury getting this additional evidence, the jury is already focused on that evidence, so they're going to be giving that greater consideration than something that might have been admitted at trial, him getting up and walking in front of the jury. Obviously there was some focus on that scar, so that's going to be getting greater emphasis than other evidence that was presented during the trial, and I think there's great prejudice to the defendant at that point. Admittedly, the trial counsel did not object, and the defendant seemed to be very willing to do that, and I don't disagree with the record, but I think that it is plain error on review, but I think that the undue emphasis that that evidence would have had at the time of trial, in the midst of the jury deliberation, should result in reversal. Thank you. Thank you. Thank you both for your arguments here today. The matter of U.S. v. Maxwell Jones is submitted.
judges: Graber, Murguia, Bury